IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

KENNETH R. BIRDO,               §
TDCJ-CID No. 02402313,          §
                                §
        Plaintiff,              §
                                §
v.                              §      2:24-CV-20-Z-BR
                                §
GREG ABBOTT, *et al.*,          §
                                §
        Defendants.             §

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS TO DISMISS COMPLAINT**

Before the Court is the Amended Complaint (ECF 17) filed by Plaintiff Kenneth R. Birdo ("Birdo") against Defendants Gov. Greg Abbott, Bryan Collier, The Hon. Elizabeth Beach, Pia R. Lederman, W. Chase Payne, Warden Adam Gonzales, Warden William Jones, Major Miller, S. Parks, Asst. Warden Schiwart, Major F. Martinez, FSM Mike Marquez and FSM Mark Allen, alleging violations of Birdo's civil rights. Birdo filed this lawsuit *pro se* while a prisoner in the Clements Unit of the Texas Department of Criminal Justice ("TDCJ") and he has been granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that Birdo's Amended Complaint be DISMISSED pursuant to 28 U.S.C. §§ 1915 and 1915A, and that he be issued a strike within the meaning of 28 U.S.C. § 1915(g).

**I. STANDARD OF REVIEW**

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

1

who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483-84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs still must plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. LEGAL ANALYSIS

### A.    Factual Background.[1]

Birdo's original Complaint alleges that Texas Governor Greg Abbott, high-ranking Clements Unit officials, and state officials involved in his criminal prosecution have conspired to discriminate against and oppress minority prisoners such as Birdo. (ECF 3).  He claimed that Defendants "deliberately undermine" the U.S. Constitution by both treating him as a captive and conducting human trafficking of minority prisoners. (*Id*. at 4). On February 20, 2025, Birdo

---

[1]These background facts are taken from Birdo's Complaint (ECF 3), Amended Complaint (ECF 17) and questionnaire responses (ECF 11).

amended his complaint. In addition to Birdo's allegations concerning his claims of discrimination and slavery, and his dissatisfaction with the conditions of his confinement, he added allegations that certain defendants withheld medical care, and others mishandled various grievances and disciplinary cases. (ECF 17). For the reasons stated below, Birdo's Amended Complaint should be dismissed as frivolous.

**B.    Claims Against Greg Abbott.**

Birdo sues Texas Governor Greg Abbott ("Abbott") as the "head ruler appointed to govern the State of Texas." (ECF 11 at 1). He claims that Abbott failed to "hold accountable individuals who violate and pervert justice with premeditated schemes done behind the scenes in the court room." (*Id.* at 2). Birdo further claims that Abbott allows human trafficking to take place, and subjects him to "cruel and unusual punishment in order to make money." (ECF 17 at 7). He further alleges that Abbott fails to prevent the judicial system from "strip[ping] away the rights of poverty[-] stricken individuals" and utilizes the judicial system "for s[u]bliminal human trafficking as a means of accumulating wealth[,] creating hostage conditions within the prisons." (ECF 11 at 12). He provides no specific facts in support of these allegations.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28. As the U.S. Supreme Court has stated, courts

> may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional. As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them.

3

*Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citations and internal quotation marks omitted). Birdo alleges no factual support for his fanciful claims against Abbott. Under Section 1915(e), a court is not bound to accept without question the truth of a *pro se* plaintiff's allegations. *Id.* The absence of material facts, combined with the irrational nature of a claim, can support a finding of factual frivolousness. *See Wesson v. Oglesby*, 910 F.2d 278, 281 (5th Cir. 1990). Here, Birdo's complaints against Abbott rise to the level of the irrational or wholly incredible and, consequently, are factually frivolous.[2] Birdo has failed to state a claim upon which relief may be granted, and his claims against Abbott should be dismissed as frivolous.

**C.    Claims Against Bryan Collier.**

Birdo sues Bryan Collier ("Collier") for "doing away with the digital mailing system where mail comes from family and friends directly to the unit." (ECF 17 at 7). While he acknowledges that the stated purpose of the electronic mail program is to stem the flow of drugs into the Clements Unit, Birdo alleges that the program was actually implemented to punish prisoners and separate them from their loved ones. (ECF 11 at 2, 12). He further claims that Collier and unspecified others use the digital mail system to censor statements that prisoners attempt to send out "about corrupted staff, and crimes committed by staff that are going undetected." (*Id.*).

A prison inmate "retains those [constitutional] rights that are not inconsistent with his status as a prisoner." *Turner v. Safley*, 482 U.S. 78 (1987) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Adams v. Ellis*, 197 F.2d 483, 485 (5th Cir. 1952)). However, "these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison

---

[2]Even if Birdo's claims against Abbott were considered viable, however, he fails to allege facts showing Abbott's personal involvement in the alleged constitutional violations. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (supervisory official may be held liable only if he affirmatively participates in the acts causing a constitutional deprivation or implements unconstitutional policies that result in the constitutional injury).

administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "Accordingly, prisoners and their correspondents enjoy the protections of the First Amendment except to the extent that prison regulations curtailing those protections are 'reasonably related to legitimate penological interests.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 214 (5th Cir. 2012) (quoting *Thornburgh*, 109 S. Ct. at 1877); *Brewer v. Wilkinson*, 3 F.3d 816, 820-21, 825-26 (5th Cir. 1993). Noting that the "judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, [the Supreme Court] has afforded considerable deference to the determinations of prison administrators." *Thornburgh*, 490 U.S. at 407-8. Accordingly, "'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.'" *Id.* (quoting *Turner*, 482 U.S. at 85). The plaintiff bears the burden to show that the challenged regulations, as applied, are not reasonably related to a legitimate penological interest. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The Fifth Circuit has noted that courts must give substantial deference to the judgment of prison officials. *Prison Legal News*, 683 F.3d at 215 (citing *Overton*, 539 U.S. at 132).

Birdo has described no constitutional violation caused by the digital mail policy, nor has he alleged facts to support a plausible claim against Collier arising from institution of the digital mail policy. *See Spiller v. City of Texas City, Texas Police Department*, 130 F.3d 162, 167 (5th Cir. 1997) (in order to satisfy the cause in fact requirement, the plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation at issue or that his injuries resulted from the execution of the policy or custom; the description of the policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts). Birdo's allegations fail to meet this standard. Specifically, he fails to allege facts showing a constitutional violation and a resulting injury to him. His allegations are not sufficient

to impute liability to Collier. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)). Accordingly, Birdo's claims against Collier should be dismissed as frivolous.

### D.    Claims Against Elizabeth Beach.

Birdo alleges that Defendant Elizabeth Beach ("Beach"), the presiding judge of Criminal District Court No. 1 of Tarrant County, Texas, "failed in her [duties] as one in authority to render justice the way God intended for it to be carried out." (ECF 11 at 3). Specifically, he claims that Beach "admitted lies into her court room in a charging instrument Plaintiff has never been charged or arraigned on." (*Id.*). He further alleges that she retaliated against him because the crimes upon which he was charged were "related to women." (ECF 11 at 13).

Judges are absolutely immune from claims for damages arising out of acts done in the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Like other forms of official immunity, judicial immunity is an immunity from suit, not just from paying damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Absolute judicial immunity can be overcome only if the plaintiff shows that the complained-of actions were nonjudicial in nature or that the actions were taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11. Birdo has failed to allege facts overcoming Beach's absolute judicial immunity; accordingly, his claims against Beach should be dismissed as frivolous.

### E.    Claims Against Pia Lederman.

Birdo alleges that Defendant Pia Lederman ("Lederman") "neglected her duties as a defense counsel" while representing him in his state court criminal proceedings. (ECF 11 at 3). He further alleges that Lederman "strategically aid[ed] the state in painting a one-sided narrative to make Plaintiff seem menacing." (*Id.* at 13). To state a valid cause of action under 42 U.S.C. § 1983, Birdo must show that he has been deprived of a right guaranteed by the Constitution or laws

of the United States by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48

(1988). A defense attorney, whether appointed or retained, does not act under color of state law.

*Polk County v. Dodson*, 454 U.S. 312 (1981). Birdo has alleged no facts showing that Lederman

is a state actor; as a result, his claims against her should be dismissed as frivolous.[3]

## F.    Claims Against W. Chase Payne.

Birdo next alleges that Defendant W. Chase Payne ("Payne"), a Texas state court

prosecutor, falsified a charging instrument against Birdo, as well as coerced an alleged victim to

lie in an unspecified manner. (ECF 11 at 4-5). He further alleges that Payne "aided the state of

[Texas] in a corrupted scheme of human trafficking in prisons" and that Payne conspired with

Lederman to strip Birdo of his due process rights. (ECF 17 at 3; ECF 11 at 13). Criminal

prosecutors are immune from civil suit for damages under Section 1983 in presenting the state's

case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). This applies to the prosecutor's actions in

initiating prosecution and carrying the criminal case through the judicial process. *Young v. Biggers*,

938 F. 2d 565, 569 (5th Cir. 1991); *Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir. 1995). Birdo

has alleged no facts that overcome Payne's prosecutorial immunity. Birdo's claims against Payne

should be dismissed as frivolous.

## G.    Claims Against Adam Gonzales.

Birdo alleges that Adam Gonzales ("Gonzales") conspired with "a class of highly

discriminative privileged individuals who impose oppression and slave tactics on people who

commit crimes, such as Plaintiff, by deliberately undermining the U.S. Constitution, state laws,

and TDCJ policy." (ECF 17 at 9). He further alleges that Gonzales allows state officials at the Bill

---

[3]To the extent Birdo attempts to allege ineffective assistance of counsel at his criminal trial, such claims
are properly brought in a petition for writ of habeas corpus rather than a civil rights lawsuit.

Clements Unit to falsify documents, deny due process and mistreat Plaintiff with all kinds of harmful acts." (*Id.*). Lastly, he claims that Gonzales "has a duty to make sure all rules, regulations and policies are maintained by residents and staff" but that disciplinary hearings are held in "a kangaroo styled fashion" that impose "excessive" amounts of good-time loss and other punishments upon prisoners. (ECF 11 at 6). He further alleges that Gonzales "neglected his duties to investigate grievances from Plaintiff." (ECF 17 at 4).

Under the standard set forth above, the majority of Birdo's allegations against Gonzales should be dismissed as factually frivolous. *See Neitzke,* 490 U.S. at 325. To the extent that Birdo alleges that Gonzales has implemented an administrative grievance policy that violates his constitutional rights, Birdo has failed to state a plausible claim because there is no constitutionally protected right to a prison grievance system. *See Schwarzer v. Wainright*, 810 F. App'x 358, 360 (5th Cir. 2020) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (holding that prisoners do not have a federally protected liberty interest in having grievances resolved to their satisfaction); *Alexander v. Tex. Dep't of Crim. Just.*, 951 F.3d 236, 240 (5th Cir. 2020) (affirming trial court's dismissal of inmate's claim that his grievances were mishandled or improperly denied, as prisoners have no due-process rights in the inmate grievance process); *Grogan v. Kumar*, 873 F.3d 273, 280 (5th Cir. 2017) ("[I]t is well established that prisoners have no due process rights in the inmate grievance process.") (citation omitted); *Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D. Tex. March 15, 2002) ("An inmate does not have a constitutional entitlement to [a] grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation."). Birdo's conclusory claims regarding Gonzales implementing improper grievance procedures and failing to properly investigate grievances state no constitutional violation. *See Geiger*, 404 F.3d at

374-75 ("Insofar as [the inmate] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous."). Birdo's claims against Gonzales should be dismissed as frivolous.

**H.    Claims Against S. Parks and Major Miller.**

Birdo alleges that Major Miller ("Miller") failed to impose upon a white inmate the same punishment that Birdo received for fighting with that inmate, thereby discriminating against Birdo. (ECF 11 at 8, 14). He alleges that S. Parks ("Parks") falsified a disciplinary report regarding the fight by wrongly labeling him as the aggressor. (*Id.*). However, dissatisfaction with the handling of a disciplinary case, without more, does not state a due process violation.

"Prison disciplinary proceedings are not [a] part of a criminal prosecution, and the full panoply of rights due a [criminal] defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To establish a due process violation in connection with a disciplinary hearing, a prisoner must establish that he has been denied a "liberty interest that the prison action implicated or infringed." *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007) (internal quotation omitted). Liberty interests are "generally limited to freedom from restraint which...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. A claim that a disciplinary charge was false, by itself, does not state a claim upon which relief may be granted. *See Harris v. Smith*, 482 F. App'x 929, 930 (5th Cir. 2012); *Lasater v. Herrera*, 729 F. App'x 362, 362-63 (5th Cir. 2018) (allegation of a false disciplinary report failed to state a claim, and due process was not implicated where plaintiff lost prison privileges).

Most of the punishments of which Birdo complains do not implicate a cognizable liberty interest and, therefore, fail to state a constitutional violation as a matter of law. Removing him

from faith-based classes does not deprive him of a cognizable liberty interest. *See Morales v. Abbott*, No. 9:17-cv-94; 2024 WL 1189480 (E.D. Tex. Feb. 27, 2024) ("Prisoners generally have no constitutionally-protected property or liberty interest in participating in rehabilitation[] programs."); *Bulger v. Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) (same); *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997) (concluding that commissary and cell restrictions do not implicate due process concerns); *Taylor v. Swift*, 2015 WL 5834057, at *1 (5th Cir. Oct. 7, 2015) (per curiam) (finding that loss of recreation and commissary privileges does not result in a deprivation of a liberty interest); *Allums v. Phillips*, 444 F. App'x 840, 841 (5th Cir. 2011) (per curiam) ("Placement in administrative segregation or a change in custodial classification as a result of a disciplinary infraction, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest, and, therefore, there is no right to due process.").

Construing Birdo's claims broadly to encompass a claim about him losing good-time credits, such claim could implicate due process concerns. However, Birdo's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a prisoner may not "seek[] damages in a § 1983 suit" if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Otherwise, Section 1983 could be used as a tool effectively to reverse state convictions without recourse to more proper means, such as habeas corpus. Thus, plaintiffs convicted of crimes may not use Section 1983 to challenge the validity or duration of their sentences. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). Because *Heck* applies to both the validity and the duration of confinement, it extends to prison disciplinary convictions in addition to criminal convictions. *Gray v. White*, 18 F.4th 463 (5th Cir. 2021) (citing *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019)).

*Heck* "precludes § 1983 litigation in the prison-disciplinary-proceeding context where it

would 'negate [the prisoner's] disciplinary conviction' if negating that conviction would 'affect[]

the duration of his sentence by restoring his good time credits.'" *Gray*, 18 F.4th at 467 (quoting

*Bourne*, 921 F.3d at 491). "Whether the plaintiff in fact seeks the restoration of good time credits,

rather than another remedy such as damages, is immaterial." *Id.* (citing *Aucoin v. Cupil*, 958 F.3d

379, 383 (5th Cir. 2020)). Birdo's claim for damages based upon loss of good-time credits

implicates *Heck* considerations and thus is barred. Accordingly, Birdo has failed to allege any due

process violations against Miller or Parks, and his claims against them should be dismissed until

the conditions of *Heck* are met.

## I.    Claims Against Warden William Jones III.

### 1.    Retaliation.

Birdo first alleges that Warden William Jones III ("Jones") retaliated against him for filing

a grievance. (ECF 17 at 9; ECF 11 at 6). Specifically, he alleges that Jones "racially attacked" him

as he sat in medical "for previously using the grievance procedure saying that certain white officers

were racially discriminating." (ECF 17 at 9). Birdo states that Jones walked up to him and started

a verbal altercation. (ECF 11 at 6). Birdo then alleges that the situation escalated in an unspecified

manner, and Jones eventually called for backup, which resulted in "staff" repeatedly spraying

Birdo with chemical agents that caused his skin to burn for three or four days. (*Id.* at 7). He alleges

that Jones "demanded that ranking officers repeatedly use chemical agents on [Birdo], using

excessive punishment." (ECF 17 at 9). He also alleges that Jones denied him access to a mental

illness treatment program. (ECF 11 at 7).

When an inmate claims that he has been the subject of retaliation, he must show facts, not

merely conclusions. *Whittington v. Lynaugh*, 842 F.2d 818 (5th Cir.), *cert. denied*, 488 U.S. 840

(1988). The plaintiff must present facts showing a retaliatory motive or the alleged conduct must

itself raise an inference of retaliation in order to support a claim. *Id*. at 819. "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The fact that one event follows another in time does not amount to proof of retaliation. *Enlow v. Tishomingo County, Mississippi*, 45 F.2d 885, 889 (5th Cir. 1995).

A valid retaliation claim requires a plaintiff to allege that: (1) he exercised a specific constitutional right; (2) the defendant intended to retaliate against him because he exercised that right; (3) he experienced a retaliatory adverse act; and (4) the adverse act would not have occurred but for a retaliatory motive. *Welsh v. Cammack,* No. 23-10961, 2024 WL 3649583 at *5 (5th Cir. 2024) (citing *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999)). The Fifth Circuit has defined an actionable retaliatory adverse act as one "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). A plaintiff must offer direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. This is a "significant burden" *Id*. "Mere conclusionary allegations of retaliation" are insufficient. *Id.; see also Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (Conclusory allegations amounting to a plaintiff's "personal belief that he is the victim of retaliation" are insufficient to state a claim for relief). Causation requires a showing that "but for the retaliatory motive the complained of incident … would not have occurred." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (citation omitted).

Birdo has provided no factual allegations supporting his claim of retaliation against Jones, nor has he provided a chronology of events from which retaliation may be inferred. Birdo provides nothing more than his personal belief that he is the victim of retaliation. Birdo has not plausibly alleged facts showing that any retaliatory motive was the cause for Jones walking up to him to start a verbal altercation that ultimately resulted in Birdo being sprayed with chemical agents. Similarly, Birdo has alleged no facts to support his conclusory claim that Jones denied him mental health treatment in retaliation for Birdo filing grievances. (ECF 11 at 7). As a result, Birdo is unable to sustain his claim of retaliation against Jones, and his retaliation claim should be dismissed as frivolous.

## 2.    Excessive Force.

The Eighth Amendment proscribes the unnecessary and wanton infliction of pain, which includes actions that are "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976). Not all force rises to the level of an Eighth Amendment claim. Specifically, Eighth Amendment protections do not extend to *de minimis* uses of physical force that are not "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). To determine whether a prison official violated an inmate's rights by using excessive force, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 6-7. Courts must "focus on the prison official's 'subjective intent' and determine it 'by reference to the well-known *Hudson* factors.'" *Byrd v. Harrell*, 48 F.4th 343, 347 (5th Cir. 2022) (quoting *Cowart v. Erwin*, 837 F.3d 444, 452-53 (5th Cir. 2016)). Those factors are "(1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5)

any efforts made to temper the severity of a forceful response." *Id.* (quoting *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019)).

Birdo alleges no facts indicating that force was unnecessary, or that the relationship between his actions and the force used was excessive to the needs of the situation. Nor does Birdo allege facts showing what, if anything, the officers perceived as a threat, reasonably or otherwise. He admits that Jones's order to another guard to write him up for creating a disturbance did "provoke a negative reaction" from Birdo, although he fails to specify the form that such "negative reaction" took. (ECF 22 at 14). Birdo fails to provide sufficient facts to show that his claim of excessive force is plausible.

Even if, however, Birdo had alleged sufficient facts to state a claim that Jones maliciously and sadistically used force upon him, he fails to allege that he suffered more than *de minimis* injuries by the use of force. Although a showing of "significant injury" is not required in the context of an excessive force claim, "we do require a plaintiff asserting an excessive force claim to have suffered at least some form of injury." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed. *Glenn*, 242 F.3d at 314.

One way to distinguish if an injury is "*de minimis*" is to consider whether medical care and treatment were needed to treat the injury. *See Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). In *Gomez*, the court determined that the plaintiff "did not seek or receive medical treatment" for his alleged injury, and thus his injury was considered *de minimis*:

> In *Siglar*, we described the complained of conduct and injury as follows: "[the corrections officer] twisted Siglar's arm behind his back and twisted Siglar's ear. Siglar's ear was bruised and sore for three days but he did not seek or receive medical treatment for any physical injury resulting from the incident. There is no

14

allegation that he sustained long term damage to his ear." [*Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997)]. We stated that these allegations presented the question "whether Siglar's bruised ear amounts to a 'physical injury' that can serve as the basis for his excessive force" claim, and concluded that because "Siglar's alleged injury—a sore, bruised ear lasting for three days—was *de minimis*" he had therefore "not raised a valid Eighth Amendment claim for excessive force." *Id*.

*Gomez*, 163 F.3d at 924. While Birdo alleges that his skin burned for three or four days, nowhere does he allege that such injury was anything more than temporary pain. He admits that he was seen by medical personnel, although he claims that they falsely stated that they did not see any injuries.[4] (ECF 11 at 7). He does not allege, however, that medical care was needed. (*Id*.). Taking Birdo's allegations as true, he has alleged, at most, a *de minimis* injury that does not rise to the level of a constitutional violation. *See Westfall v. Luna*, 903 F.3d 534, 549-50 (5th Cir. 2018) (recognizing that abrasions, bruises, bloody urine, and high blood pressure and heart rate are *de minimis* injuries insufficient to support an excessive force claim); *Brooks v. City of W. Point, Miss*., 639 F. App'x 986, 990 (5th Cir. 2016) (finding that abrasions to hands and knees, some neck and back pain, and unspecified problems with asthma are *de minimis* injuries). Birdo has not stated a claim of excessive force against Jones, and such claim should be dismissed as frivolous.

**3.    Lost Property.**

Birdo next alleges that Jones threw away a $100 pair of shoes that Birdo's family and friends purchased for him and sent to the unit. (ECF 17 at 9). "Prisoners have a cognizable constitutionally protected property interest in their personal property." *Eubanks v. McCotter*, 802 F.2d 790, 793–94 (5th Cir. 1986). Nevertheless, under the *Parratt/Hudson* doctrine, "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to

---

[4]While this may have supported a claim against the unnamed medical personnel, Birdo does not allege that Jones prevented medical personnel from treating him.

provide an adequate post[-]deprivation remedy." *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quotation marks and citations omitted). The Texas administrative and judicial systems allow prisoners to raise ordinary tort claims such as conversion or an administrative remedy for lost or damaged property. *See Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995); *Spurlock v. Schroedter*, 88 S.W.3d 733, 737 (Tex. App.--Corpus Christi 2002).

Therefore, the initial question is whether Birdo has alleged that Jones took his shoes pursuant to a state policy or as "random, unauthorized conduct". The U.S. Supreme Court has noted that "[c]onduct is not 'random and unauthorized' … if the state 'delegated to [the defendants] the power and authority to effect the very deprivation complained of." *Zinerman v. Burch*, 494 US. 113, 115 (1990) (quoted in *Allen*, 388 F.3d at 149 (5th Cir. 2004)). Birdo clearly and undisputedly alleges that Jones was acting illegally in confiscating his property, rather than pursuant to a state policy. (ECF 17 at 9). Because Birdo alleges that Jones's conduct was unauthorized, the *Parratt/Hudson* doctrine applies.

 "A prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional *minima* are nevertheless met." *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (quotation marks and citations omitted). In *Brewster*, the Fifth Circuit Court of Appeals held that a due process claim was properly dismissed because Texas law provides the adequate post-deprivation remedy of conversion when property is taken without proper procedures. *Id.* Because Birdo has an adequate post-deprivation remedy under Texas law in that he has the right to sue for conversion in state court, he does not have a Section 1983 due process claim. Accordingly, Birdo's claims against Jones should be dismissed as frivolous.[5]

---

[5]Birdo's conclusory, one-line claim that Jones attempted to get an officer to write a false disciplinary case

**J.    Claims Against Assistant Warden Schiwart and Major F. Martinez.**

Birdo's claims against Assistant Warden Schiwart ("Schiwart") and Major F. Martinez ("Martinez") arise from his dissatisfaction with the manner in which his grievances were handled. (ECF 19 at 1, 2). Specifically, he alleges that Schiwart falsified documents in response to Birdo's grievance and did not do a "just investigation." (*Id*. at 1). He alleges that Martinez utilized improper questions in investigating his grievance "only to take the information in order to label Plaintiff a snitch." (*Id.* at 2). Birdo admits that he was not physically injured due to anyone believing Martinez's alleged claim that he was a snitch, but complains that Martinez lied about him and that his "feelings were hurt and still are." (*Id*. at 5-6).

**1.    Labeling Birdo as a Snitch.**

Labeling an inmate a "snitch" can give rise to an Eighth Amendment duty to protect inmates from harm in certain circumstances. *See Schreane v. Beemon,* 575 F. App'x 486 (5th Cir. 2014) ("The Eighth Amendment duty to protect inmates from harm can be violated when a prison official acts with deliberate indifference by exposing a prisoner to physical assault through labeling him a 'snitch' to other inmates."). However, that duty is violated only when the inmate suffers an actual physical injury as a result of being labeled a snitch.

Numerous cases have addressed whether injury is required to demonstrate a constitutional violation in the context of a failure to protect claim and have concluded that the dismissal is warranted when no injury has occurred as a result of the defendant's actions. *See Walzier v. McMullen*, 333 F. App'x 848, 851 (5th Cir. 2009) (upholding summary judgment in favor of the defendants where there was no proof of harm to the plaintiff from co-inmates and, "[a]bsent a

---

against him also states no viable claim, under the standards set forth above, especially because the officer apparently refused to do so. (ECF 17 at 9).

showing that other inmates harmed [the plaintiff], there is no factual basis for a failure to protect claim"); *Castellano v. Treon*, 79 F. App'x 6, 7 (5th Cir. 2003) ([inmate's] failure-to-protect claim fails because "he concedes that he suffered no actual physical injury resulting from the prison officials' purported failure to protect"). While the Court accepts all well-pleaded facts as true and in a light favoring the plaintiff, the Court does not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citation omitted). Because Birdo suffered no physical injury, he cannot state a constitutional violation for failure to protect against Martinez, and that claim should be dismissed as frivolous.

### 2.    Complaints About the Grievance Process.

Birdo's allegations against Shiwart and Martinez amount to nothing more than a claim that his grievance was not resolved to his satisfaction. "Prisoners do not have a federally protected liberty interest in having [their] grievances resolved to their satisfaction, and an alleged § 1983 due process violation for failure to investigate grievances is indisputably meritless." *Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) (internal quotations omitted). The Fifth Circuit has stated that an alleged violation of a prisoner's due process rights resulting from prison grievance procedures is a "legally nonexistent interest." *Geiger*, 404 F.3d at 374. Further, even an intentional cover-up does not amount to a constitutional violation. *See Cunningham v. de la Vaga*, 131 F.3d 141 (5th Cir. 1997) (per curiam) ("Regarding Cunningham's contention that the defendants conspired to cover up the attack …, Cunningham has not shown that the defendants violated any constitutionally protected right."). Accordingly, assuming the truth of the allegations in Birdo's Amended Complaint, his cause of action against Shiwart and Martinez regarding an improper grievance investigation fails to state a viable due process violation and, therefore, should be dismissed as frivolous.

**K.      Claims Against Nebiyu A. Tesfaw.**

Birdo's Amended Complaint alleges that Nebiyu A. Tesfaw ("Tesfaw") discriminated against him "by abusing his authority, treating Plaintiff with cruel and unusual punishment by retaliating on Plaintiff to aid other staff members in mistreating Plaintiff." (ECF 17 at 5). He states that he was sent to pre-hearing detention after a fight with another inmate who was high on K-2 at the time. (*Id*. at 1). When asked to elaborate in the Court's questionnaire, Birdo states that Tesfaw "did lock me up in [pre-hearing detention] out of retaliation[,] assisting Major Martinez who was upset about [Birdo] reporting a [third] degree burn injury obtained in the kitchen." (ECF 19 at 4).

The Eighth Amendment's prohibition on cruel and unusual punishment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). To establish an Eighth Amendment violation, Birdo must show that he was exposed to "a substantial risk of serious harm," and "that prison officials acted or failed to act with deliberate indifference to that risk." *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). "A prison official displays deliberate indifference only if he (1) 'knows that inmates face a substantial risk of serious bodily harm' and (2) 'disregards that risk by failing to take reasonable measures to abate it.'" *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (quoting *Gobert*, 463 F.3d at 346).

Birdo's claims fall far short of this "extremely high standard." *See Arenas*, 922 F.3d at 620 (quoting *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001)). Birdo alleges only that Tesfaw placed him in pre-hearing detention for an unspecified amount of time because Martinez was upset that Birdo had reported a burn injury. He fails to allege any facts indicating that Tesfaw acted with deliberate indifference. Birdo's claims against Tesfaw should be dismissed as frivolous.

19

**L.      Claims Against Mike Marquez and Mark Allen.**

Birdo sues Mike Marquez ("Marquez") and Mark Allen ("Allen") for claims arising out of an incident in the prison kitchen whereby Birdo was "severely burned" while cooking. (ECF 17 at 12). Birdo claims that Marquez authorized Birdo to cook grits, which he had done several times before, although Birdo was neither trained to do so nor assigned as a kitchen cook at the time. Hot grits spilled onto Birdo's wrist as he worked with the kitchen equipment. (*Id*.; ECF 19 at 6). Birdo claims that Marquez and Allen threatened to write a false disciplinary case against him if he asked for medical care since he was not assigned to them as a kitchen cook and they would be blamed for his injury. (*Id*. at 3). As a result, Birdo states he was forced "to walk around for [three] days with [third] degree boils causing infection." (ECF 17 at 12). Birdo eventually asked another guard to take him for medical care, and the guard did so. He states he was treated from November 2024 to January 2025 for the burn. (*Id.*).

A prison official's deliberate indifference to the serious medical needs of a prisoner can constitute a violation of the Eighth Amendment actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is an "extremely high standard to meet." *Domino*, 239 F.3d at 756. It requires a finding that the defendant "disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836-40. A plaintiff must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster*, 587 F.3d at 770 (citation and internal quotation omitted); *see also McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)

20

("Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.").

The deliberate indifference standard has both an objective and subjective component. *See Farmer*, 511 U.S. at 834. To establish deliberate indifference, Birdo must show that Marquez and Allen each were (1) aware of facts from which an inference of an excessive risk to Birdo's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *Id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Under the subjective prong of this analysis, a prison official acts with deliberate indifference "only if ... he knows that inmates face a substantial risk of serious bodily harm and ... he disregards that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (quoting *Farmer*, 511 U.S. at 847); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'").

Birdo sues Marquez and Allen for the three-day delay before he received medical care. "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (per curiam) (alterations in original) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Birdo, however, has not alleged a serious medical need that either Marquez or Allen knowingly disregarded.

A "serious medical need" is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. "[T]he facts . . . must clearly evince the medical need in question and indicate that the denial of treatment was much more likely than not to result in serious medical consequences." *See*

21

*Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Birdo alleges no facts showing that he requested medical care from Marquez or Allen, nor has he alleged facts showing that he had a "serious medical need" that was so apparent that even a layman would recognize the need for care. *See Alexander v. Tex. Dep't of Crim. Just.*, 951 F.3d 236, 241 (5th Cir. 2020) ("To establish deliberate indifference, the prisoner must show that the prison official knew of and disregarded an excessive risk to inmate health or safety.") (citation omitted). Birdo does not describe the burn or provide any other facts showing that Marquez or Allen had a subjective understanding that Birdo needed immediate medical attention for a serious injury that resulted from hot grits landing on his wrist.

Birdo states that, at the time he received medical treatment, his arm had started blistering and turning pink; however, he does not allege that the delay in medical care itself caused this condition, rather than the burn. (ECF 19 at 5). Nor does Birdo allege any facts showing that the delay in care caused an infection.[6] Birdo's conclusory statements do not meet his burden to plead specific facts showing that either Marquez or Allen violated his Eighth Amendment rights. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (stating that a Section 1983 plaintiff must file a "short and plain statement of his complaint ... that rests on more than conclusions alone"); *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1983) (explaining that conclusory allegations will not suffice to prevent dismissal for failure to state a claim). Accordingly, Birdo's claims against Marquez and Allen should be dismissed as frivolous.

---

[6]Authenticated records show that Birdo had put mustard on the burn. When asked about it in the Court's questionnaire, Birdo neither confirmed nor denied the assertion. (ECF 19 at 5). Authenticated records further indicate that Birdo refused several offers for medical treatment; although Birdo admits the truth of this assertion, he claims he refused treatment due to his fear that Marquez and Allen would write him up. (*Id.* at 4). However, he alleges no facts indicating that Marquez and Allen interfered with his eventual request for medical care.

**M.    Claim for Injunctive Relief.**

Birdo asks the Court for a preliminary injunction to restrain the Clements Unit mail room from unreasonably delaying his receipt of mail. An injunction is "an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). To obtain injunctive relief, a plaintiff must establish: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the non-movant; and (4) that the granting of the preliminary injunction will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). The plaintiff "must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted." *Id.* If the plaintiff fails to satisfy any one of the four factors, injunctive relief will not issue. *See, e.g., May v. Wells Fargo Home Mortg.*, No. 3:12-CV-4597-D, 2013 WL 2367769, at *1 (N.D. Tex. May 30, 2013).

As stated above, Birdo has failed to show a substantial likelihood that he will prevail on the merits of his claim against Gonzales regarding the Clements Unit mail system. Birdo's claim for injunctive relief should be denied.

**N.    Claim for Declaratory Judgment.**

Birdo asks the Court for a declaratory judgment to overturn various court cases issued by both the U.S. Supreme Court and the Fifth Circuit Court of Appeals. This Court is without the power to provide such relief. Birdo's request for a declaratory judgment should be denied as frivolous.

**O.    Leave to Amend.**

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to

dismissal. *Brewster*, 587 F.3d at 767-68. The district court is not required to allow such an opportunity, though, if the prisoner's claims are clearly frivolous, *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994), or if the prisoner has pleaded his best case in the current complaint. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020). Birdo has fully responded to the Court's two questionnaires and has amended his Complaint; therefore, leave to amend is unnecessary.

RECOMMENDATION

For the reasons stated above, the Magistrate Judge concludes that Birdo's *Heck*-barred claims should be DISMISSED WITH PREJUDICE until the conditions of *Heck* are met. Birdo's remaining claims should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Birdo should be issued a strike within the meaning of 28 U.S.C. § 1915(g).

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED August 29, 2025.


_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE


**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28

U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).